IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: GEORGETTE M. MOISUC

CIVIL ACTION
NO. 15-3799

**OPINION**

**Slomsky, J.**  June 19, 2017

## I. INTRODUCTION

On February 2, 2015, Debtor Georgette M. Moisuc, proceeding pro se, filed a petition for relief under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Pennsylvania. On July 9, 2015, Debtor appealed to this Court an Order of the Bankruptcy Court signed by Bankruptcy Judge Jean K. Fitzsimon. The Order granted the Chapter 7 Trustee's Motion to Approve a Compromise under Rule 9019 of the Federal Rules of Bankruptcy Procedure[1] (the "9019 Motion"). (Doc. No. 1.) After considering the briefs of the parties and the record on appeal, the Court will affirm the Bankruptcy Court's Order which approved the compromise under Rule 9019.

---

[1] Rule 9019 of the Federal Rules of Bankruptcy Procedure provides in relevant part:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

1

## II. BACKGROUND

### A. The Loan

The Debtor, Georgette M. Moisuc, and her husband, Vladimir Moisuc, owned real property as tenants-by-the-entireties located at 106 Deep Dene Road, Villanova, Radnor Township, Delaware County, Pennsylvania (the "Premises"). (Doc. No. 6 at 7 ¶ 6.) On September 21, 2004, New Century Mortgage Corporation (the "Lender") extended a loan in the amount of $660,000 (the "Loan") to Vladimir Moisuc ("Borrower"). (Id. at 7 ¶ 4.) Borrower executed and delivered a Note (the "Note") to the Lender for the same amount. (Id.) "In partial consideration of, as partial security for, and as a partial inducement to the Lender to extend the Loan," Borrower and his wife, Debtor, executed and delivered a mortgage on the Premises (the "Mortgage") in favor of the Lender. (Id. at 7 ¶ 6.) The Mortgage was executed on the same date, and for the same amount, as specified in the Note. (Id.) On October 5, 2004, the Mortgage was recorded with the Recorder of Deeds of Delaware County, Pennsylvania. (Id. at 7 ¶ 8.) On June 5, 2012, the Note and Mortgage were assigned to Deutsche Bank National Trust Company (the "Bank") and were recorded on July 17, 2012. (Id. at 7 ¶ 9.) "The Note and Mortgage have not been further assigned, and the Bank remains their holder." (Id. at 7 ¶ 10.)

On May 4, 2008, Borrower, Debtor's husband, passed away. (Id. at 7 ¶ 12.) Upon his passing, "complete title to the Premises became vested in the Debtor by operation of law." (Id. at 7 ¶ 13.)

### B. The State Court Foreclosure Action and Federal Bankruptcy Proceedings

Following her husband's death, Debtor made mortgage payments. Thereafter, Debtor defaulted on her payment obligation under the terms of the Mortgage and the Note. On July 9, 2012, Deutsche Bank National Trust Company (the "Bank"), in its capacity as Trustee, initiated

an action to foreclose the Mortgage against Debtor.[2] (Doc. No. 25 at 10; Doc. No. 26 at 4.) The action is titled "<u>Deutsche Bank National Trust Company, as Trustee Under Pooling and Servicing Agreement Dated as of January 1, 2005 Morgan Stanley ABS Capital I Inc. Trust 2005-HE1, v. Georgeta [sic] Moisuc</u>" and is pending in the Court of Common Pleas of Delaware County, Pennsylvania under Docket Number 12-005790 (referred to as the "Foreclosure Action"). (<u>Id.</u>)

On February 2, 2015, one day before trial was scheduled to commence in state court, Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code.[3] In the Brief of the Chapter 7 Trustee, Gary F. Seitz, Esquire, filed in this Court, he recounts the history of the case as follows:

> When the [state court] Foreclosure Action was called for trial, the Debtor claimed that her signature on the subject mortgage was a forgery, though no such contention appeared in her filed answer to the foreclosure complaint. Trial in the Foreclosure Action was adjourned to allow the Bank to conduct discovery on the Debtor's forgery claim. The Bank sought and received permission to file an amended Complaint setting forth additional claims against the Debtor to be pursued only if the state court determined that her signature on the mortgage was a forgery.
>
> The Debtor filed an Answer to the Amended Complaint, setting forth her claim of forgery, together with various affirmative defenses to the Foreclosure Action, and counterclaim against the Bank. Well after she filed her Answer to the Amended Complaint, the Debtor served the Bank with an expert report asserting that her husband's signature on the subject note and mortgage had also been forged. This was the first time that such an assertion had been made, and contradicted allegations made in the answer.

---

[2] The Bank brought foreclosure proceedings because no payments had been made on the Mortgage from January 1, 2012 through July 9, 2012, the date on which the Foreclosure Action was brought. (Doc. No. 6 at 7 ¶ 17.)

[3] Debtor states in her initial brief filed here that the reason she filed for bankruptcy was because she could "no longer . . . keep up with payments on unsecured credit cards at that time, monthly payments in total of which amounted to $400." (Doc. No. 29 at 21.) She also disclosed to the Bankruptcy Judge that she could not hire another lawyer in order to proceed with the Foreclosure Action in state court. (Bankr. Hr. Tr., 29:17-21, June 24, 2015.) Debtor's Chapter 7 Petition was not included in the record on appeal to this Court.

3

Trial in the Foreclosure Action was scheduled to resume on February 3, 2015, but was stayed by the Debtor's bankruptcy filing.[4] On March 9, 2015, the Bank moved for relief from the Automatic Stay (the "Stay Relief Motion"). The Debtor filed an Objection to the Stay Relief Motion.

Upon the Chapter 7 filing, the Debtor's forgery claims (and all of the other defenses set forth in her Answer to the Bank's Amended Complaint in Mortgage Foreclosure, and in the Objection to the Stay Relief Motion) became property of the Chapter 7 estate, by operation of 11 U.S.C. § 541.[5] The Trustee investigated the Debtor's forgery (and other) claims, and, among other things, reviewed the filed pleadings and the transcript of the Debtor's deposition from the Foreclosure Action.

As a result of his investigation, the Trustee concluded, in an exercise of his business judgment that it would not be in the best interests of the Estate to assert the Debtor's proffered defenses to the Foreclosure Action, nor to the Bank's Stay Relief Motion.

The Trustee's conclusion was based upon, among other things, the following:

a. There were no funds available to pay counsel to litigate the forgery claim, except as a percentage of any recovery;

b. Success on the forgery claim would inevitably result in an appeal, with the additional expense attendant thereto, and again, with no funds available to pay counsel;

c. It would likely take more than a year for the disposition of the likely appeal to become final, during which this case would have to beheld [sic] open, delaying its final administration and closing;

---

[4] As noted above, Debtor filed the Chapter 7 Bankruptcy Petition on February 2, 2015, one day before the Foreclosure Action was scheduled to resume in state court.

[5] Section 541 provides in relevant part:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. § 541.

d. The lateness of the Debtor's assertion of the forgery claim cast serious doubts upon its validity;

e. The Debtor admitted, in state court deposition testimony, that both she and her husband were present at closing on the subject loan, which cast further doubt upon the validity of the Debtor's forgery claims;

f. The Debtor admitted, in state court deposition testimony, that the net proceeds of the subject loan were deposited into a checking account titled jointly in the names of the Debtor and her husband, which strongly suggests that the Debtor and her husband authorized, ratified or acquiesced in any possible forgeries of their signatures (which forgeries are denied by the Bank);

g. Assertion of the Debtor's claims would have required the close cooperation of the Debtor. Since prevailing on those claims would likely result in the sale of the Debtor's residence against her wishes, it seemed unlikely that the Debtor would cooperate with the Trustee to the degree necessary to successfully assert those claims;

h. The Debtor had offered contradictory evidence in the Foreclosure Action. In her Answer to the Amended Complaint filed therein, she admitted that her husband had signed the subject note and mortgage, but an expert report served on the Bank several weeks later contained the assertion that her husband's signatures were also forged; and

i. The Debtor's Schedule "E" indicates that the Debtor has no "priority unsecured" debt, and the Debtor's Schedule "F" indicates that the Debtor has only $14,848.21 in general unsecured debt.

The Bank offered the Trustee $20,000.00, in full and final settlement of all of the Debtor's defenses to, and claims in opposition to, (a) the Foreclosure Action (including (i) the Debtor's assertion that her signature on the subject mortgage is a forgery, or is otherwise ineffective; (ii) the Debtor's assertion that her husband's signature on the subject mortgage is a forgery or is otherwise ineffective; and (iii) the Debtor's assertion that her husband's signature on the subject note is a forgery or is otherwise ineffective); and (b) the Stay Relief Motion, to be paid within 15 days after a court order approving the settlement becomes final.

The Bank and the Trustee memorialized the foregoing agreement, on the terms and conditions set forth in a stipulation (the "Stipulation"), which provided, *inter alia*, the following:

A. Within 15 days after Court approval of the Stipulation, the Bank shall tender the sum of $20,000.00 (the "Settlement Payment") to the Trustee.

B. The Trustee agrees to accept the Settlement Payment in full and final settlement of (a) the Debtor's claim that her signature was forged on the Mortgage; (b) all other claims and defenses to the Foreclosure Action; and (c) all claims and defenses set forth in the Debtor's Objection to the Stay Relief Motion (collectively, the "Settled Claims").

C. Effective upon receipt and collection of the Settlement Payment, the Trustee, on behalf of the Chapter 7 Estate and as successor by operation of law to the interests of the Debtor in the Settled Claims, unconditionally releases, remises and forever discharges Deutsche Bank National Trust Company, in its capacity as Trustee under the Pooling and Servicing Agreement Dated as of January 1, 2005 for the Morgan Stanley ABS Capital I Inc. Trust 2005-HE1, its servicers, subservicers, and its and their respective agents, employees, representatives, predecessors, shareholders, directors, officers, partners, attorneys, successors and/or assigns, and any and all other persons or entities, whether or not identified (collectively, the "Releasees") of and from any and all manner of actions and causes of action, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, claims and demands whatsoever in law or equity, which constitute, arise from or are related to the Settled Claims, and which the Debtor possessed against the Releasees as of the commencement of this case (whether known or unknown, asserted or unasserted, scheduled or unscheduled, liquidated or unliquidated, contingent, absolute, litigated or unlitigated).

D. It is the intention of the parties that the Releasees be granted relief to the same extent and with the same force and effect as if the Debtor had executed the release herself, absent the instant Chapter 7 filing.

E. The Trustee hereby consents to a grant of relief from the Automatic Stay, in favor of the Bank, effective upon the filing of a Notice of Receipt and Collection, to the extent necessary to permit the Bank (a) to exercise its rights as a secured creditor of the Debtor pursuant to the Mortgage and applicable state law, by, among other things, resuming the prosecution of its state court Mortgage Foreclosure action against the Debtor, and – if the Bank prevails therein – causing a Sheriff's Sale of the Premises subject

F. The Trustee further consents to a waiver of the 14-day stay of Bankruptcy Rule 4001(a)(3), making the grant of stay relief effective immediately upon filing of the Notice of Receipt and Collection described below.

G. Because the Settlement Payment should be sufficient to pay all unsecured claims in full, and to cover all administrative expenses of the estate, the Trustee, effective upon filing of a Notice of Receipt and Collection, abandons all of the estate's right, title and interest in and to the Premises as provided by 11 U.S.C. §554 and Bankruptcy Rule 6007(a).

H. The Trustee shall file a Notice of Receipt and Collection with respect to the Settlement Payment, within 3 business days after receipt and collection thereof.

On May 18, 2015, the Trustee filed the 9019 Motion to approve the Stipulation.[6] On June 19, 2015, the Debtor filed an objection to the 9019 Motion. A hearing on the 9019 Motion was held on June 24, 2015, wherein no testimony was taken but the Trustee proffered that in the exercise of his business judgment, the Stipulation was the best resolution of the issues attendant thereto. The Debtor offered no testimony or evidence to rebut the Trustee's proffer but, rather, just argued to the Court the merits of the underlying Foreclosure Action.

On June 24, 2015, the Court entered an Order approving the 9019 Motion. Thereafter, the Debtor filed the instant appeal [with this Court on July 9, 2015].

(Doc. No. 26 at 4-8) (original footnote omitted.)

---

[6] On May 27, 2015, Debtor filed a Motion to Dismiss the Bankruptcy Case. (Doc. No. 6 at 16.) She stated that her "circumstances [had] changed, and [she could] resolve her financial affairs with creditors without the aid of proceedings under the Bankruptcy Code, and the best interests of both debtor and her credit card creditors are served by dismissal of the case." (Id.) She further argued that the "[c]reditors will not be prejudiced in any way as debtor has only consumer debts, in the form of three sole credit cards." (Id.) Both the Bank and the Chapter 7 Trustee opposed the Debtor's Motion to Dismiss. (Doc. No. 25 at 12.) The Bankruptcy Court denied the Motion to Dismiss at a hearing held on June 24, 2015. (Bankr. Hr. Tr., 9:11-19, June 24, 2015.)

### C. Bankruptcy Court Hearing held on June 24, 2015

On June 24, 2015, the Bankruptcy Court held a hearing on the Motion to Dismiss filed by Debtor, and the Chapter 7 Trustee's Motion to Approve a Compromise under Rule 9019 of the Federal Rules of Bankruptcy Procedure ("9019 Motion"). As noted above the Bankruptcy Judge denied Debtor's Motion to Dismiss. (Bankr. Hr. Tr., 9:11-19, June 24, 2015.) (See supra, n.6.)

At the hearing, the Bankruptcy Judge granted the 9019 Motion, the final Order appealed to this Court, and stated her findings on the record as follows:

> Motions to approve compromises are largely, absent some evidence of the complete failure of the trustee to exercise any business judgment whatsoever, or in the face of evidence that the trustee's business judgment was clearly faulty, are routinely approved by the Bankruptcy Court.
>
> Here we have a fairly compelling settlement because it, in fact, provides for the payment in full of all of the unsecured claims that were, at least originally, on file in this case.
>
> The difficulty that Ms. Moisuc [Debtor] faces is that she has really got to show me either that Mr. Seitz [the Chapter 7 Trustee] failed to exercise business judgment at all or largely failed to exercise business judgment or that his judgment is clearly faulty.
>
> The difficulty with doing that when you are dealing with a trial is that the one hand [sic] I have the trustee testifying that, in fact, he has reviewed the state court matter, reviewed the reports of all of the experts in the state court matter, reviewed the facts that lead him to believe that the bank would have prevailed in the state court matter, and reviewed the facts that would lead him to believe that the debtor's position here is difficult to sustain because, in fact, the debtor got all of the benefit of the bargain that was struck, whether or not the documents were signed by both her and her husband or not.
>
> Nothing that the debtor has provided to me, she hasn't provided me with copies of the reports to argue that the trustee's judgment is clearly faulty with regard to that, nor has she been able to suggest to me that there is any reason that I should challenge the trustee's judgment in making the determination that he has made here to go forward.

\* \* \*

> It is very clear to me that, as I say, Ms. Moisuc [Debtor] got the benefit of the loan, that she has admitted that the loan was taken out by her husband and that the mortgage was signed by her spouse.
>
> The difficulties that have arisen since his death are disturbing from a standpoint of some of the arguments that she makes with regard to the treatment that she received that the hands of the bank, whether it is true or not I have no idea. But, the frank answer is that is what she had to deal with at the state court level.
>
> I have heard nothing from the trustee that would suggest that any of those arguments would have been availing at the state court level, and as a result I am going to find the trustee has engaged in a perfectly fine exercise of his business judgment and I am going to approve the settlement.

(Bankr. Hr. Tr., 30:7-32:12, June 24, 2015.)

### III.     STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 158(a), a federal district court has appellate jurisdiction over final judgments, orders, and decrees of bankruptcy courts. Universal Minerals, Inc. v. C. A. Hughes & Co., 669 F.2d 98, 100-01 (3d Cir. 1981). "Typically, in civil litigation, a decision is only final if it leads to a court's complete disassociation from a case." In re Klass, --- F.3d ----, Nos. 15-3341 & 16-3482, 2017 WL 2367976, at *3 (3d Cir. June 1, 2017) (citing Bullard v. Blue Hills Bank, 135 S. Ct. 1686, 1691 (2015)). A district court "does not sit as a finder of facts . . . ." Universal Minerals, Inc., 669 F.2d at 101. Rather, the district court must "review the bankruptcy court's legal determinations de novo, its factual findings for clear error and its exercise of discretion for abuse thereof." In re Trans World Airlines, Inc., 145 F.3d 124, 131 (3d Cir. 1998).

Matters reviewed based on an allegation of a bankruptcy court's abuse of that discretion are considered to determine whether the "decision rests upon clearly erroneous findings of fact, an errant conclusion of law, or an improper application of law to fact." In Re SGL Carbon Corp., 200 F.3d 154, 159 (3d Cir. 1999) (quotations omitted). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the

definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).

IV. ANALYSIS

In this case, the Court must review the Bankruptcy Court's Order, which granted the Chapter 7 Trustee's 9019 Motion over Debtor's objections, for abuse of discretion. The Order approved a Stipulation Settlement Agreement between the Bank and the Chapter 7 Trustee, on behalf of the estate. "Under Bankruptcy Rule 9019, a bankruptcy judge has the authority to approve a compromise of a claim, provided that the debtor, trustee and creditors are given twenty days' notice of the hearing on approval of a compromise or settlement by the trustee." In re Martin, 91 F.3d 389, 393 (3d Cir. 1996) (citing Fed. R. Bankr. P. 2002(a)(3)). The United States Court of Appeals for the Third Circuit established a four factor test for evaluating a settlement between a bankruptcy estate and a third party. See id. ("This particular process of bankruptcy court approval requires a bankruptcy judge to assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal.").

> [W]e recognize four criteria that a bankruptcy court should consider in striking this balance: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors.

Id. The Court will address each of the four Martin factors in turn.

**A. Martin Factor One: Probability of Success in Litigation**

The Bankruptcy Court did not abuse its discretion in relying on the Chapter 7 Trustee's judgment as to the probability of Debtor's success in state court litigation. It is clear from the record that the Chapter 7 Trustee carefully reviewed the facts in the state Foreclosure Action and

exercised sound business judgment. Debtor's conclusory arguments to the contrary are unconvincing.

At the Bankruptcy Court hearing on June 24, 2015, the Trustee testified to reviewing the state court pleadings, testimony of the notary public as to the validity of the signatures on the loan documents, and the expert reports presented in the state court trial. (Bankr. Hr. Tr., 18:5-21, June 24, 2015.) Moreover, the Chapter 7 Trustee stated that "[t]here is also information in the record that it is undisputed that the debtor and her husband received the benefit of the loan. They received the funds that paid off the prior mortgage and in addition to that they received a substantial check after closing, I think it was over $200,000." (Id. at 18:16-21, June 24, 2015.) The Chapter 7 Trustee concluded "that the chances are better than a 50/50 proposition that the creditor was going to prevail in the state court litigation." (Id. at 18:24-19:1, June 24, 2015.)

At the hearing, Debtor did not present any evidence or argument that the Chapter 7 Trustee's business judgment was faulty. She merely re-argued her state court claim as to the alleged signature forgery, citing to a handwriting expert's reports. Debtor repeatedly claimed at the hearing and in her briefings to this Court that these reports were overlooked. (See Doc. No. 29 at 31; Doc. No. 33 at 17-20.)

While these reports were not submitted to the Bankruptcy Court and consequently not in the record on appeal, the Chapter 7 Trustee testified that he reviewed all of the expert reports submitted, including the reports Debtor claimed were repeatedly overlooked. (Bankr. Hr. Tr., 33:1-13, June 24, 2015.) The Chapter 7 Trustee specifically noted that "[t]here [were] two or three handwriting experts that have prepared reports about whether the signatures were forged or

not. Clearly there are two versions diametrically opposed as to whether or not they [were] forged." (Id. at 18:9-13, June 24, 2015.)[7]

The Bankruptcy Court did not err in relying on the Chapter 7 Trustee's business judgment after the Trustee reviewed these reports, and on the Trustee's conclusions on the probability of success in litigation generally. The Bankruptcy Court correctly noted:

> I have the trustee testifying that, in fact, he has reviewed the state court matter, reviewed the reports of all of the experts in the state court matter, reviewed the facts that lead him to believe that the bank would have prevailed in the state court matter, and reviewed the facts that would lead him to believe that the debtor's position here is difficult to sustain because, in fact, the debtor got all of the benefit of the bargain that was struck, whether or not the documents were signed by both her and her husband or not.

(Id. at 30:24-31:9, June 24, 2015.) Thus, there is no clear error in applying the facts of the case to the applicable law. Therefore, the first Martin factor was sufficiently considered by the Bankruptcy Court.

### B. Martin Factor Two: Likely Difficulties in Collection

The Bankruptcy Court also properly considered the second Martin factor, the likely difficulties in collection. Debtor claims that there would have been no difficulties in collection. She relies upon the fact that she had "requested to be released from the Chapter 7 petition" through her Motion to Dismiss, and that she "desired to fully reaffirm [her] unsecured credit card

---

[7] Debtor argues in this Court that her "expert has already submitted multiple written reports that the signatures on the documents presented by opposing counsel's client are all forged." (Doc. No. 33 at 17.) Further, she argues that there was "absolutely no contradictory evidence offered at any time." (Id.) Relying on the Chapter 7 Trustee's judgment, the Bankruptcy Court previously explained to Debtor that the handwriting expert reports submitted to the state court by Debtor and counsel for the Bank "were opposed to each other." (Bankr. Hr. Tr., 33:11-13, June 24, 2015.) Further, Debtor affirmatively agreed on the record when the Bankruptcy Court asked her if "a mortgage and a note in the amount that is in question here were, indeed, signed by your husband [Borrower]." (Id. at 22:1-5, June 24, 2015.) Debtor's argument is therefore unconvincing, and the Bankruptcy Court did not err in relying on the Chapter 7 Trustee's business judgment.

12

debt in full." (Doc. No. 33 at 23.) This argument is unconvincing for the precise reason the Bankruptcy Court acknowledged at the hearing:

> THE DEBTOR: The case would be dismissed for good cause. The creditors will not be prejudiced because they will be in the same place they were before.
>
> THE COURT: Wait a minute, stop. How is that when the trustee is going to get enough money to pay them 100 cents on the dollar? . . . Do you have the money to pay them 100 cents on the dollar tomorrow?
>
> THE DEBTOR: Not the 100 percent, but --
>
> THE COURT: Okay. So, now you understand that's the problem you have to deal with here, which is that I have a case in which I can get everyone paid 100 cents on the dollar virtually immediately.
>
> If you can't do that, it's very difficult for you to argue that it doesn't impact your creditors for me to dismiss your case.
>
> * * *
>
> THE COURT: [W]hat I have asked you to do is give me a basis on which to grant your motion to dismiss, and I have not heard one from you, because the only basis is that your creditors might agree to do something different, and that's not relevant to my decision.
>
> So, at this point I will deny your motion to dismiss the case.

(Bankr. Hr. Tr., 6:13-9:17, June 24, 2015.)

The approved Stipulation would have paid Debtor's creditors in full almost immediately. Debtor admitted that she could not do so on her own, but would merely resume her payments. Approving the Stipulation essentially meant no difficulties in collection for the creditors, while Debtor's proposition could not make the same guarantee. Thus, the second <u>Martin</u> factor was sufficiently considered by the Bankruptcy Court.

### C. <u>Martin</u> Factor Three: Complexity of the Litigation Involved

The Bankruptcy Court did not err in relying upon the Chapter 7 Trustee's judgment in evaluating the third <u>Martin</u> factor, the complexity, expense, inconvenience, and delay of the

litigation involved. "For practical purposes, [the first Martin factor—probability of success in the litigation] is considered in conjunction with Martin's third factor—the complexity, expense, inconvenience, and delay of the litigation involved—because the balancing of the complexity and delay of litigation with the benefits of settlement is related to the likelihood of success in that litigation." In re W.R. Grace & Co., 475 B.R. 34, 78 (Bankr. E.D. Pa. 2012) (internal quotations and citations omitted).

The Chapter 7 Trustee considered several factors in evaluating the reasonableness of the settlement when compared to future litigation including, but not limited to:

> (i) success on the forgery claim would inevitably result in an appeal, with the additional expense attendant thereto, with no funds available to pay counsel; and (ii) it would likely take more than a year for disposition of the likely appeal to become final, during which this case would have to beheld [sic] open, delaying its final administration and closing.

(Doc. No. 26 at 12.) Moreover, the Trustee argues that the Foreclosure Action would "involve a battle of experts" with respect to the Debtor's claim of forgery. (Id.)

Debtor argued that she "proposed alternative settlement measures which would not have prejudiced her creditors in any way, no cost in litigation would have been incurred." (Doc. No. 33 at 23-24.) There is no evidence in the record on appeal of a proposed alternative settlement that Debtor proffered to the Bank or the Chapter 7 Trustee. Assuming arguendo that the "proposed alternative settlement measure" is asserted in her Motion to Dismiss and that it includes resuming payment on her unsecured credit card debt, the Court has previously considered this offer and found it unacceptable. See supra Section IV (B). Accordingly, the Bankruptcy Court did not err in denying Debtor's Motion to Dismiss.

In addition to the discussion of the Bankruptcy Court's findings as to the first Martin factor, supra Section IV (A), the Bankruptcy Judge also noted that she "heard nothing from the

14

trustee that would suggest that any of [Debtor's] arguments would have been availing at the state court level, and as a result I am going to find the trustee has engaged in a perfectly fine exercise of his business judgment and I am going to approve the settlement." (Bankr. Hr. Tr., 32:7-12, June 24, 2015.) Thus, the third was appropriately considered by the Bankruptcy Court in approving the compromise.

### D. <u>Martin</u> Factor Four: Paramount Interest of the Creditors

The Bankruptcy Court did not abuse its discretion in regard to the fourth <u>Martin</u> factor, the paramount interest of the creditors. "When the Debtor filed her schedules of assets and liabilities, she scheduled no priority unsecured debt and scheduled $14,848.21 in general unsecured debt." (Doc. No. 26 at 13.) Both the Bank and the Chapter 7 Trustee argue that the settlement clearly satisfies the fourth <u>Martin</u> factor because it would result in a 100 percent distribution to the unsecured creditors and would have been sufficient to cover administrative costs at the time of the approval. (Doc. No. 25 at 31; Doc. No. 26 at 13.) The Court agrees.

Debtor does not dispute that the $20,000 settlement would result in a 100 percent distribution to unsecured creditors. Rather, she echoes her argument from her Motion to Dismiss that the "creditors would have be[en] even better served by allowing debtor to continue to make her payments . . . ." (Doc. No. 33 at 24.) Approving the Stipulation meant no difficulties in collection of full payment for the creditors, while Debtor's proposition could not make the same assurance. This argument has been previously addressed, <u>supra</u> Section IV (B), and for those reasons the Court finds it unpersuasive in regard to the fourth <u>Martin</u> factor.

The Bankruptcy Court did not err in granting the 9019 Motion in favor of the settlement. The Bankruptcy Court properly weighed all of the <u>Martin</u> factors in deciding in favor of the

Chapter 7 Trustee's motion, and therefore the Bankruptcy Court's Order will be affirmed and the appeal will be dismissed.

### E. Debtor's Remaining Arguments

Debtor makes many other arguments in an attempt to raise claims that the Bankruptcy Court did not consider important matters regarding the 9019 Motion and in refusing her request to re-litigate the substance of her state court claims.[8] For example, Debtor dedicated fourteen (14) pages in her Opening Brief to discussing whether of "Deutsche Bank, National Trust Company, in its capacity as Trustee under the Pooling and Servicing Agreement Dated January 1, 2005 for Morgan Stanley ABS Capital I Inc. Trust 2005-HEL" has standing before the Court. (Doc. No. 29 at 40-53.) Debtor argues that "Deutsche Bank National Trust as Trustee has not

---

[8] Debtor makes the following arguments in her Opening Brief to this Court that are unrelated to the Order directly on appeal from the Bankruptcy Court granting the 9019 Motion:

1. No such Trust as named by Deutsche Bank National Trust as Trustee exists. (Doc. No. 29 at 40.)
2. Deutsche Bank did not have standing in federal bankruptcy Court. (Id. at 41.)
3. The assignment of the Mortgage is a violation of Bankruptcy Code section 362(a)(4). (Id. at 42-43.)
4. The assignment of the Mortgage is a violation of Bankruptcy Code section 362(a)(5). (Id.)
5. Deutsche Bank lacks standing as per applicable Federal Rules of Civil Procedure and Bankruptcy Procedure. (Id. at 44-45.)
6. Deutsche Bank National Trust as Trustee lacks constitutional standing to seek relief in a federal court. (Id. at 45-50.)
7. Deutsche Bank is not the real party in interest. (Id. at 51.)
8. Deutsche Bank is not the holder in due course. (Id. at 52.)
9. The Mortgage and Note are defective. (Id. at 54-56.)
10. The Mortgage and Note are not authentic. (Id. at 56.)

The Court has reviewed Debtor's arguments and find them without merit in this appeal.

demonstrated [it has] standing to file a claim."[9] (Id. at 50.) Debtor has presented no evidence to support this vague claim.

First, as to the Bank's standing on appellate review, the Third Circuit has held:

> This court has emphasized that appellate standing in bankruptcy cases is limited to "person[s] aggrieved." Travelers Ins. Co., 45 F.3d at 741. We consider a person to be aggrieved only if the bankruptcy court's order "diminishes their property, increases their burdens, or impairs their rights." In re Dykes, 10 F.3d 184, 187 (3d Cir. 1993) (citation omitted). Thus, only those "whose rights or interests are directly and adversely affected pecuniarily" by an order of the bankruptcy court may bring an appeal. Id. (internal quotation marks and citation omitted). The "person aggrieved" standard is more stringent than the constitutional test for standing. In re O'Brien Envtl. Energy, Inc., 181 F.3d 527, 530 (3d Cir. 1999).

In re PWS Holding Corp., 228 F.3d 224, 249 (3d Cir. 2000).

The Bank has standing in the bankruptcy appeal to this Court. Debtor appealed the Bankruptcy Court's decision on the 9019 Motion. In the 9019 Motion, the Chapter 7 Trustee requested that the Bankruptcy Court approve the Stipulation[10] between the Bank and the Trustee. Agreed to in the Stipulation, "the Bank shall tender the sum of $20,000.00 (the 'Settlement Payment') to the Trustee." (Doc. No. 26 at 4.) The Bankruptcy Court granted the 9019 Motion, approving the Stipulation and thus affecting the Bank pecuniarily in this bankruptcy case, specifically through a settlement payment of $20,000.00. It is clear that the Bank has standing before this Court, and Debtor's arguments are without merit.

Additionally, Debtor repeatedly contends that the Mortgage and Note are defective and not authentic, specifically reasserting her claim that the signatures were forged. (Id. at 53-56.)

---

[9] The Court notes that it is Debtor that filed the bankruptcy appeal in this Court, not the Bank. (Doc. No. 1.) Moreover, the issue of the Bank's standing before the Bankruptcy Court was not included in the record on appeal. (See Doc. No. 6.) Debtor has provided this Court with no evidence to support her argument that the Trust the Bank represents as Trustee does not exist, or that the Bank did not have standing in the Bankruptcy Court.

[10] See supra Section II (B) at 5-7.

The Chapter 7 Trustee took this claim into account and reviewed the expert reports on the forgery and the Bankruptcy Court considered his analysis in evaluating the Martin factors. The fact that the Bankruptcy Court did not receive the reports into evidence does not diminish the Bankruptcy Court's considered judgment in evaluating the Martin factors. (See Bankr. Hr. Tr., 32:13-33:21, June 24, 2015.)

Moreover, "[t]he record on appeal should contain all items considered by the bankruptcy court in reaching a decision . . . . Conversely, if an item was not considered by the court, it should be stricken from the record on appeal." In re Ames Dept. Stores, Inc., 320 B.R. 518, 521-22 (Bankr. S.D.N.Y. 2005) (holding that items never offered into evidence cannot be part of the record on appeal). The handwriting expert reports were not included in the record on appeal, and the Bankruptcy Court specifically did not issue a final order on Debtor's claim that the signatures were forged. But the Bankruptcy Court did consider its overall value in approving the 9019 Motion. Because the reports, by themselves, were not made part of the record in the Bankruptcy Court, this Court will not rule on any further substantive claims made by Debtor.

V.  CONCLUSION

For the foregoing reasons, the Court will affirm the Bankruptcy Court's Order which granted the Chapter 7 Trustee's Motion to Approve Compromise under Rule 9019 of the Federal Rules of Bankruptcy Procedure. Accordingly, the appeal is dismissed. An appropriate Order follows.

18